IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY BLASA,<br><br>Plaintiff,<br><br>v.<br><br>SHELL USA, INC.;<br>PHILLIPS 66 COMPANY;<br>ATON, LLC;<br>SAFETY KLEEN SYSTEMS, INC.;<br>3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company;<br>TYCO FIRE PRODUCTS L.P., successor in interest to The Ansul Company;<br>CHEMGUARD, INC.;<br>E.I. DU PONT DE NEMOURS & CO.;<br>NATIONAL FOAM, INC.;<br>HWRT OIL COMPANY;<br>WILLIAMS FIRE & HAZARD CONTROL, INC.;<br>JOHNSON CONTROLS, INC.;<br>ANGUS INTERNATIONAL SAFETY GROUP, LTD.;<br>ANGUS FIRE ARMOUR CORPORATION,<br>CARRIER GLOBAL CORPORATION,<br>UNITED TECHNOLOGIES CORPORATION,<br>KIDDLE PLC INC., and<br>KIDDE-FENWALFIRE FIGHTING, INC.,<br><br>Defendants. | Civil Action No. 3:24-cv-62 |

**NOTICE OF REMOVAL**

Defendants Tyco Fire Products LP and Chemguard, Inc.[1] (collectively "Tyco" unless identified individually by full name), by undersigned counsel, hereby give notice of the removal

---

[1] Identified simply as "Chemguard" in the Complaint.

1

of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court of the Third Judicial Circuit, Madison County, Illinois (the "State Court"), to the United States District Court for the Southern District of Illinois. As grounds for removal, Tyco alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. Plaintiff, Timothy Blasa, seeks to hold Tyco and certain other Defendants liable based on their alleged conduct in designing, manufacturing, marketing, distributing, and/or selling aqueous film-forming foam ("AFFF") that Plaintiff alleges has caused him injury. *See* Complaint, pp. 5, 7.

2. Specifically, Plaintiff alleges that Tyco and certain other Defendants manufactured and sold per- and polyfluoroalkyl substances ("PFAS") or products that contain PFAS, including AFFF, and that the use of those substances in AFFF caused Plaintiff to develop testicular cancer. Plaintiff alleges that he currently lives in Bethalto, Illinois and that he was "was born and raised in Wood River, Madison County, Illinois and was provided drinking water by the City of Wood River for many years that contained elevated levels of" PFAS. *Id.*, p. 2. Plaintiff also alleges that PFAS was "discharged into the air and surface/ground/drinking water in and around where Plaintiff lived." *Id.*, p. 3.

3. At least some of the AFFF that gives rise to Plaintiff's claims has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Tyco is entitled to

2

remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008); *accord Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) (federal officer removal "covers situations . . . where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete").

## BACKGROUND

4. This action was filed on November 21, 2023, in the State Court (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 93(c) and 1441(a) because the State Court is located within the Southern District of Illinois.

5. Tyco Fire Products LP was served with the Summons and Complaint on December 7, 2023. Chemguard, Inc. has not been served. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b).

6. Plaintiff generally alleges that Defendants, including Tyco, have designed, manufactured, marketed, distributed, and/or sold AFFF that contains PFAS, and that the use of AFFF has caused injury to Plaintiff, namely, testicular cancer. Plaintiff asserts claims against Tyco and certain other Defendants, denominated as the "PFAS Defendants," for negligence (Count 1); strict liability—design defect (Count 2); and strict liability—failure to warn (Count 3). Plaintiff asserts claims against a separate group of Defendants, denominated as the "Industrial Defendants," for negligence (Count 4) and strict liability—ultrahazardous activity (Count 5). Finally, Plaintiff

asserts claims against Defendant Safety-Kleen Systems, Inc. for negligence (Count 6) and strict liability (Count 7).

7. Tyco is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiff's action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); ); *Ayotte v. Boeing Co.*, 316 F. Supp. 3d 1066, 1073 (N.D. Ill. 2018).

8. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the State Court.

9. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue; and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

10. Tyco reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1).

11. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: it is a "(1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Ruppel*, 701 F.3d at 1180–1181 (quoting 28 U.S.C. § 1442(a)); *accord Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135.

12. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999). This is because the "basic purpose of § 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers." *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1004 (N.D. Ill. 2007). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *accord Durham*, 445 F.3d at 1252. To the contrary, 28 U.S.C. § 1442 as a whole must be "liberally construed" in favor of removal. *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007).

13. As set forth below, all requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the Plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that the plaintiffs' injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019) ("MDL Order 1"); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in

AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[2]

### A. MilSpec AFFF

14. The United States Naval Research Laboratory developed AFFF in the 1960s to quickly suppress and extinguish liquid fuel fires, which are an ever-present risk in aviation and military environments. Since the late 1960s, following catastrophic fires aboard the aircraft carriers USS *Forrestal* in 1967 and USS *Enterprise* in 1969,[3] the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to put out fires, save lives, protect property, and train its personnel. Pursuant to requirements of the Federal Aviation Administration, MilSpec AFFF is also widely used to fight fires at certain civilian airports (so-called "Part 139" airports). The Naval Research Laboratory has described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

15. The manufacture and sale of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, a unit of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[5] All MilSpec AFFF products must be qualified

---

[2] Following removal, Tyco intends to designate this action for transfer to the MDL.

[3] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[4] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[6] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements. After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[7] Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

16. From its inception until 2019, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS. This requirement has been in force for virtually the entire time period preceding Plaintiff's cancer diagnosis. In 2019 the MilSpec removed the requirement of "fluorocarbon" surfactants, but the DoD has acknowledged that no AFFF product can satisfy the stringent performance requirements of the MilSpec without the use of PFAS-containing surfactants. To this day, all MilSpec AFFF contains PFAS as an essential component.

17. So-called "Part 139" airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft. *See* 14 C.F.R. § 139.1 (2019). Since at least 2006, the Federal Aviation Administration has required Part 139 airports to use MilSpec AFFF.

---

[6] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[7] *Id.*

18. At least some of the AFFF-derived PFAS that Plaintiff has been exposed to has come from MilSpec AFFF, including MilSpec AFFF manufactured by Tyco.

19. The St. Louis Regional Airport (the "Airport"), located in Bethalto, Illinois, is a Part 139 airport that is required to stock and use MilSpec AFFF and has been so required since at least 2006. (Although the Airport's Part 139 status is currently listed as "inactive," it is still required to adhere to Part 139 requirements, including the use of MilSpec AFFF.) The Airport has used MilSpec AFFF for training and testing purposes and to fight fires. In addition, the U.S. military uses and has used the Airport for military flights. In 2018, over 600 flights into or out of the Airport—more than 2% of the total—were military operations. In connection with military operations, military personnel have used and released MilSpec AFFF at the Airport. The MilSpec AFFF used at the Airport has included MilSpec AFFF manufactured by Tyco in accordance with military specifications and acting under the direction of the DoD.

20. The Airport lies in close proximity to the City of Wood River (the "City"), and the direction of water flow from the Airport is toward the City. PFAS from MilSpec AFFF used at the Airport has migrated through the environment and reached groundwater sources used by the City for drinking water, which Plaintiff has consumed. Further, Plaintiff lives in close proximity to the Airport. He alleges that PFAS-containing products manufactured by Tyco and other Defendants, including AFFF, have been "discharged into the air . . . in and around where Plaintiff lived." Complaint, p. 3. If so, a least some of the AFFF discharged into the air where Plaintiff lived has been MilSpec AFFF used at the Airport.

21. In addition, the City's water supply contains PFAS from the use of MilSpec AFFF (including MilSpec AFFF manufactured by Tyco) at military sites and Part 139 airport sites

upstream of the City on the Mississippi River, including without limitation the Rock Island Arsenal and the former Savanna Army Depot.

22. Because Plaintiff's claims in this case plausibly arise, at least in part, from manufacture and/or use of MilSpec products that were required to contain PFAS, Tyco is entitled to remove this case as a whole under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based on alleged contamination and exposure that is at least in part caused by and/or related to MilSpec products.

### B.  All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.

#### 1.  The "Person" Requirement Is Satisfied.

23. The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP (a limited partnership), Chemguard, Inc. (a corporation), and 3M (a corporation) meet the definition of "persons" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018) ("Corporations are persons under § 1442(a).").

#### 2.  The "Acting Under" Requirement Is Satisfied.

24. The second requirement, "acting under" a federal officer, is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Watson*, 551 U.S. at 152; *see also Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 942 (7th Cir. 2020); *Ruppel*, 701 F.3d at 1181. The phrase "acting under" is to be "liberally construed in favor of the entity seeking removal." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor

9

seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Id.* (emphasis in original).

25. The requirement of "acting under" a federal officer is met here Plaintiff's alleged PFAS exposure stems in part from MilSpec AFFF, a vital product provided by Tyco that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[8] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same). If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

---

[8] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

26. In designing and manufacturing the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[9]

### 3. The "Under Color Of Federal Office" Requirement Is Satisfied.

27. The third requirement, that a defendant's actions were taken "under color of federal authority," requires a connection between the charged conduct and asserted official authority.[10] *See Baker*, 962 F.3d at 944–45; *Ruppel*, 701 F.3d at 1181. Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. To meet this requirement, "there need be only *a connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted); *accord Baker*, 962 F.3d at 944 (Seventh Circuit has "join[ed] all the courts of appeals that have replaced causation with connection" for purpose of applying the "under color of federal office" requirement); *Isaacson*, 517 F.3d at 137–138 ("[d]efendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties.").[11] Courts

---

[9] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[10] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

[11] The "acting under" and "under color of" requirements overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht v. A.O. Smith Water Prods.*, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011).

11

"credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

28.     Here, Plaintiff alleges that the use of PFAS in AFFF is the source of his injuries. Tyco contends that some of the AFFF giving rise to Plaintiff's claimed injuries was MilSpec AFFF, and that the use of PFAS in MilSpec AFFF was required by military specifications. As a result, Plaintiff's claims against Tyco are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards."); MDL Order 2, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiffs' injuries); MDL Order 3, at 5–6 (same). It is irrelevant that Plaintiff does not expressly contend that it has been injured by MilSpec AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     The "Colorable Federal Defense" Requirement Is Satisfied.

29.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

30.     At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted). In other words, "a colorable federal defense under § 1442(a) need only be

plausible." *Betzner*, 910 F.3d at 1014. "A defendant 'need not win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see Ruppel*, 701 F.3d at 1182 ("[T]his requirement . . . encapsulates Congress's desire to have federal defenses litigated in federal forums. . . . Requiring the defense only to be colorable, instead of 'clearly sustainable,' advances that goal." (quoting *Willingham*, 395 U.S. at 407)); *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994) ("A federal defendant need not show that he is entitled to *prevail* in order to have access to the federal forum."); *see also Bennett*, 607 F.3d at 1089; *Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); MDL Order 1, 2019 WL 2807266, at *3 ("the defense need not be 'clearly sustainable' to justify removal as merely 'colorable'") (quoting *Acker*, 527 U.S. at 432); *accord Nessel*, 2021 WL 744683, at *4. At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo*, 771 F.3d at 116; *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted); *see Ruppel*, 701 F.3d at 1182 ("At this point, we are concerned with who makes the

ultimate determination, not what that determination will be. . . . The validity of the defense will present complex issues, but the propriety of removal does not depend on the answers." (internal quotation marks omitted)).

31.  Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512; *see also, e.g.*, *Baker*, 962 F.3d at 946; *Betzner*, 910 F.3d at 1016. Tyco has satisfied these elements for purposes of removal.

32.  The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling. Those specifications are "reasonably precise" in requiring the use of PFAS. As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification. In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of

the product's PFAS content and of the alleged risks associated with PFAS in the product. *Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

33.  With respect to the second requirement, Tyco's products have appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See id.* at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

34.  Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

firefighting exercises are considered to have adverse effects environmentally."[13]  By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."  In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, a type of PFAS found in MilSpec AFFF, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.  More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding certain PFAS.  Nonetheless, it still described PFAS-containing AFFF containing as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[14]  Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS will be present in AFFF formulations.[15]  If the government is already aware of the relevant product hazards, no warning by the manufacturer to the government is required. *See Ayo*, 2018 WL 4781145, at *14; MDL Order 1, 2019 WL 2807266, at *3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

---

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[14] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[15] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

35. At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co. (In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

36. Tyco's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused at least in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

37. In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by Tyco and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

38. Accordingly, Tyco is entitled to remove this action as a whole to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). When any claim or portion

of a claim meets the requirements for removal under § 1442(a)(1), a defendant is entitled to remove the action as whole to federal court. *See, e.g., Baker*, 962 F.3d at 945.

WHEREFORE, Tyco hereby removes this action from the Circuit Court of the Third Judicial Circuit, Madison County, Illinois to this Court.

Respectfully Submitted,

/s/ Laura K. Beasley
Laura K. Beasley #6274537
Baker Sterchi Cowden & Rice LLC
23 Public Square Suite 400
Belleville, Illinois 62220
lbeasley@bakersterchi.com

*Attorneys for Tyco Fire Products LP and Chemgaurd, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing pleading was filed via the Court's Electronic Case Filing (ECF) system, which will send a notification to all counsel of record. I hereby certify the pleading was emailed on this 8th January 2024, on the counsel listed below.

Ted N. Gianaris
Joshua A. Edelson
Gianaris Trial Lawyers
One Court Street
Alton, IL 62002
tgianaris@lawforpeople.com
jedelson@lawforpeople.com
*Attorneys for Plaintiff*

                                          /s/ Laura K. Beasley